IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PC PUERTO RICO LLC.

    Appellant/Defendant,

    v.

EMPRESAS MARTÍNEZ VALENTIN, CORP., et al.

    Appellee/Plaintiff.

CIVIL NO. 17-2358 (PAD)

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

    PC Puerto Rico, LLC. ("PCPR") appeals from the bankruptcy court's judgment awarding Empresas Martínez Valentin Corp ("Empresas Martínez") damages for willful violation of the automatic stay under Section 105(a) of the Bankruptcy Code, in addition to costs and attorney's fees. For the reasons that follow, the bankruptcy court's judgment is AFFIRMED.

**I.    BACKGROUND**

    Empresas Martínez, a Puerto Rico corporation, owned real property in Sabana Grande, Puerto Rico. The property contains a gasoline station. It was subject to a long-term lease agreement entered into by the prior owner of the property and Texaco Puerto Rico, Inc., now PCPR. On August 19, 2011, Empresas Martínez filed a petition for relief under Chapter 11 of the Bankruptcy Court, 11 U.S.C. §§ 101-1532, as amended. See, Bankruptcy Case No. 11-07018 (EAG). On August 31, 2011, it filed a complaint initiating an adversary proceeding against PCPR for violation of the automatic stay and other matters (Adv. No. 11-00178 (EAG), Docket No. 1).

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 2

On September 22, 2015, it amended the complaint to add actions related to loss of income, loss of future income and loss of value as a going concern (Adv. Docket No. 218).[1]

After a six-day bench trial (Adv. Docket Nos. 266, 267, 268, 270, 280, 281, 282, 285 & 286; Appellant Exhs. XIV-XIX), the bankruptcy court found that PCPR willfully violated the automatic stay by disposing of supermarket equipment and inventory, imposed compensatory damages in the amount of $75,000.00 for the lost equipment and $333,153.00 for the lost inventory (Adv. Docket No. 323), and awarded $6,364.99 in costs and $107,627.56 in attorney's fees (Adv. Docket Nos. 362 and 363). On November 27, 2017, it entered Judgment in the amount of $522,145.55 (Adv. Docket No. 364).

On appeal, PCPR challenges the bankruptcy court's determination that PCPR violated the automatic stay; contests the admission of plaintiff's expert's report and testimony; and challenges the award of damages, costs and attorney's fees (Docket No. 7). The bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error. See, In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir.1991); In re A&J Auto Sales, Inc., 223 B.R. 839 (D.N.H. 1998); Robb v. Schindler, 142 B.R. 589, 590 (D.Mass.1992). By those standards, PCPR cannot prevail.

---

[1] Following PCPR's request for summary judgment, the bankruptcy court dismissed one of the causes of action. (Adv. Docket. No. 176.) At a hearing held on August 13, 2015, it was informed – for the first time – that the "real property had been sold in the summer of 2014, and that the premises other than the gas station and convenience store was already given back to debtor" (Adv. Docket Nos. 212 and 323) Because these developments rendered moot a number of the counts and allegations in the original complaint, plaintiff was given a term to file an amended complaint to strike the counts that were no longer relevant. But before trial, the bankruptcy court struck the breach of contract claim. The loss of future income/loss of value as a going concern claim was rendered moot by the sale of the real property to a third party. Id. at p. 30 and Adv. Docket No. 240; Adv. Docket No. 362, Opinion and Order dated November 27, 2017, at p. 12 and Adv. Docket No. 364.

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 3

## II. DISCUSSION

### A. Willful violation of the automatic stay

The bankruptcy court concluded that PCPR willfully violated the automatic stay by disposing of the debtor's supermarket equipment and inventory, which were property of the debtor and, as such, protected by the automatic stay; and for the violation, awarded damages to the debtor as stated above (Adv. Docket No. 323). Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Pursuant to section 105(a) of the Bankruptcy Code, a debtor-corporation like Empresas Martínez may request that an entity be held in contempt of court for violation of the automatic stay under the contempt power of the court. See In re El Comandante Management Co., LLC., 358 B.R. 1, 11 (Bankr. D.P.R. 2006)(citing Spookyworld, Inc. v. Town of Berlin, et al., 346 F.3d 1 (1st Cir. 2003); In re Skinner, 917 F.2d 444 (10th Cir.1990)); In re Horned Dorset Primavera, Inc., 2018 WL 3629952, *24 (Bankr. D.P.R. July 27, 2018).

To prevail, a party requesting contempt sanctions must show, by clear and convincing evidence, that the other party violated an order of the court. See, Adv. Docket No. 323 at p. 16 (citing Accusoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001)). The automatic stay qualifies as such an order. See, 2 Collier On Bankruptcy, ¶ 105.02[1] (Richard Levin & Harry J. Sommers eds., 16th ed. 2018)("….there can be no doubt that the automatic stay qualifies as a specific and definite court order.")(citing In re Dyer, 322 F.3fd1178, 1190-1191 (9th Cir. 2003); In re Bennett, 298 F.3ds 1059 (9th Cir. 2002)). The violation must be willful, which requires that the defendant "knew of the automatic stay and that the defendant's actions which violated the stay were

Case:11-00178-EAG Doc#:399 Filed:10/11/18 Entered:10/11/18 14:36:47 Desc: Main
Case 3:17-cv-02358-PAD Document 29 Filed 09/30/18 Page 4 of 12
Document Page 4 of 12

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 4

intentional." In re Pace, 67 F.3d 187, 191 (9th Cir. 1995). The bankruptcy court has discretion to award damages for violation of stay under Section 105(a). See, In re A&J Auto Sales, Inc., 210 B.R. 667, 671 (Bankr. D.N.H. 1997).

1. The Supermarket

PCPR alleges that it did not violate the stay because, among other reasons, it was exercising its rights over a gasoline station convenience store (Docket No. 7 at pp. 13-17). When Empresas Martínez purchased the property, it included a station with four fuel pumps, a carport, a building housing a caged cashier booth to handle fuel sales and five commercial spaces (three of which were empty). After purchasing the property, Empresas Martínez conducted extensive renovations, including converting a commercial space in the building into a full-fledged supermarket, called Supermarket Tabonuco (Adv. Docket No. 323 at pp. 8 and 9).[2]

The bankruptcy court concluded that PCPR did not consider the area of the property on which the supermarket was built to be part of the 2001 lease agreement such that PCPR's holdover of the supermarket after Empresas Martínez filed for bankruptcy, was an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," in violation of 11 U.S.C. § 362(a)(3). Its conclusion is well reasoned and supported.

First, the bankruptcy court examined: (i) the lease agreement (admitted as Joint Exh. I); (ii) the sublease agreement (admitted as Joint Exh. III); (iii) the testimony of Mr. José Luis Faure-Castro (former district manager of PCPR); and (iv) PCPR's actions contemporaneous and subsequent to the contract with regards to the station, concluding that PCPR's own actions

---

[2] In March 2009, PCPR entered into an agreement to sublease the property to Martinez to operate the gasoline station, selling Texaco-branded gasoline products. See, Joint Exh. III.

Case:11-00178-EAG Doc#:399 Filed:10/11/18 Entered:10/11/18 14:36:47 Desc: Main
Case 3:17-cv-02358-PAD Document 29 Filed 09/30/18 Page 5 of 12
Document Page 5 of 12

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 5

contradicted PCPR's characterization of the supermarket as a "service station convenience store," for the size and scope of the supermarket grew so substantially that it "well exceeded that of a gasoline service station convenience store" (Adv. Docket No. 323 at p. 20).

Second, if the supermarket fell under the March 2009 sublease agreement between Mr. Martínez and PCPR for the operation of the gas station selling Texaco-branded gasoline products, Mr. Martínez would have needed prior written consent from PCPR to conduct any renovations or modifications. Yet there was no evidence that Martínez ever sought permission from PCPR for any of the changes to the property or, more important, that PCPR ever complained of that fact despite being aware – as confirmed by the testimony of Ms. Miriam Berrios, PCPR's business consultant during the relevant period, who was tasked with supervising the Sabana Grande station – that the renovations were taking place. Id. at p. 20. Furthermore, the bankruptcy court noted that Ms. Berrios' testimony "made clear" that PCPR treated the other businesses on the property, including the supermarket and the third party rental spaces located therein, as separate from the gasoline service station. Id.

Third, PCPR's closure of the supermarket on August 4, 2011, occurred *pre-petition,* for Empresas Martínez filed for bankruptcy more than two (2) weeks later, on August 19, 2011. Id. at p. 17. As a result, the closure of the supermarket did not violate the automatic stay because, at the time, the debtor was not under the stay's protection. However, PRPC's refusal to return the supermarket to the debtor after the petition was filed constituted a violation of the stay. In consequence, the bankruptcy court properly rejected PCPR's contention that the 2001 lease encompassed the entire property, and, therefore, by closing the supermarket it was simply exercising its rights.

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 6

    2. PCPR's "good faith efforts"

PCPR contends that the bankruptcy court *ignored* its inability to comply with the stay and the good faith efforts that it claims it conducted to substantially comply with the stay "to the best of its ability" (Docket No. 7 at p. 22).[3] Contrary to PCPR's contention, the bankruptcy court specifically considered and extensively evaluated PCPR's allegations of good faith (Docket No. 323 at pp. 21-25). In fact, it examined the circumstances PCRP presented and, in its discretion, decided not to award damages for contempt corresponding to PCPR's failure to return the supermarket to Empresas Martínez after receiving notice that it had filed for bankruptcy. Id. at p. 22.

Additionally, the bankruptcy court decided not to award any damages to Empresas Martínez for the supermarket's loss of income up until the sale of the property, after the finding that Empresas Martínez failed to meet its burden of quantifying the loss. In analyzing PCPR's disposal of the supermarket equipment and inventory, however, the bankruptcy court reasonably rejected PCPR's position, finding that PCPR violated the automatic stay by exercising control over the property of the estate in violation of the stay.

First, the bankruptcy court found that PCPR received timely notice of Empresas Martínez' bankruptcy filing well before the supermarket equipment and inventory were destroyed. Notwithstanding, PCPR hired a maintenance company to destroy the remaining equipment and inventory, both of which were *property of the debtor,* under the wrong impression that it had a

---

[3] In PCPR's own words, the "good faith efforts" can be summarized as follows: first, it explained that it showed respect for the estate by paying monthly rent up until the plot was sold to a third party in June of 2014; second, that part of the property that was unrelated to the pending controversies regarding the station – the metal shop property – was returned to Empresas Martinez shortly after the bankruptcy case was filed; and third, upon prevailing in a case against the Mr. Martinez in the U.S. District Court, it hired a maintenance company that oversaw safeguarding the station, which allowed Mr. Martinez access to the premises in order to remove the mini-market inventory and equipment but that he was unable to remove all that property due to what he described as "extenuating circumstances." In PCPR's view, those circumstances were out of its control and serve to prove it acted in good faith when it removed the property of the premises after Empresas Martinez was unable to do so.

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 7

right over the rented premises. So even if PCPR was under a good faith impression about the rights it had over the property, it does not alter the bankruptcy court's conclusion that "[t]he debtor's loss of its rights to possess the rented premises did not divest the debtor of ownership of the items of personal property stored in the premises. The destruction of the debtor's personal property was plainly an act to exercise control over the property within the meaning of Section 362(a)(3)." See, In re Calloway, 2016 Bankr. LEXIS 3678, at *2 (Bankr. D.D.C. October 11, 2016)).

Second, the bankruptcy court explained that PCPR's contention that it had a post-petition order from the U.S. District Court against Mr. Martínez allegedly authorizing PCPR to dispose of the supermarket equipment, lacked merit because "'it is well settled in the First Circuit that actions taken in violation of the automatic stay are void and without legal effect,' including court orders." (Adv. Docket No. 323 at p. 23)(citing In re Hart, 282 B.R. 70, 77 (B.A.P. 1st Cir. 2002)(finding that state court judgment filed a month after the debtor filed for bankruptcy to be void).

Third, the bankruptcy court concluded that Mr. Martínez made reasonable efforts to remove the equipment and inventory prior to a non-bankruptcy court- issued deadline –to comply with an order that was in any event void– but that "he was unable to comply fully at least in part because of extenuating circumstances."(Adv. Docket No. 323 at p. 24). To this end, PCPR had no pressing need to dispose of the equipment and inventory, and to do so in an irrevocable manner. To the contrary, Empresas Martínez showed at trial – through the testimony of Mr. Martínez – that a gypsum wall could "easily have been erected separating the cashier booth from the market at a relatively minor cost of approximately $1,750.00." Id.

Fourth, even without the wall, the supermarket equipment could have been left where it was without interfering with the operation of the gas station in any significant manner. As the

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 8

bankruptcy court stated: "[g]iven the value of the equipment and inventory, and knowing that Empresas Martínez had filed for bankruptcy the prior month, [PCPR] accepted the risk of incurring liability by not first obtaining an order from this court lifting the automatic stay prior to destroying the items." Id. In all, PCPR's contention finds no record support.

### B. Sanctions under Section 105(a)

1. Damages

PCPR claims that, regardless of whether a violation of the automatic stay occurred, imposition of damages was not warranted. Bankruptcy courts possess discretionary authority to award damages for automatic stay violations under Section 105(a). See, In re Horned Dorset Primavera, 2018 WL 3629952 at *24 (citing In re Spookyworld, 346 F.3d 1, 7 (1st Cir. 2003)). The exercise of that discretion will not be disturbed by an appellate court absent a showing that it was abused. See, MJS Las Croabas Properties, Inc., 545 B.R. 401, 417 (1st Cir. BAP 2016)(noting that "[a] bankruptcy court's imposition of a sanction typically embodies a judgment call, and, thus, review is for abuse of discretion")(internal citations omitted). The abuse of discretion standard is quite deferential and not "appellant friendly." Id. Thus, the fee award will be set aside only if the sanctioned litigant shows the sanctioning court ignored a factor deserving significant weight, relied upon an improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them. Id.

PCPR challenges the damages award, claiming Empresas Martínez did not show damages with concrete, reliable evidence, and that in awarding damages the bankruptcy court relied on Mr. Avilés, an improperly admitted expert witness.[4] Empresas Martínez sought damages for the loss

---

[4] Because this argument questions the bankruptcy court's decision to admit or exclude expert testimony due to an alleged violation of a Federal Rule of Civil Procedure, the test is the same: abuse of discretion. Boston Gas Co. v. Century Indem. Co., 529 F.3d 8,

Case:11-00178-EAG Doc#:399 Filed:10/11/18 Entered:10/11/18 14:36:47 Desc: Main
Document Page 9 of 12
Case 3:17-cv-02358-PAD Document 29 Filed 09/30/18 Page 9 of 12

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 9

of the supermarket equipment, loss of supermarket inventory and loss of the supermarket's income up until the sale of the property in June 2014 (Adv. Docket No. 218). The bankruptcy court granted in part Empresas' Martínez request, accepting as supported Mr. Avilés' valuation of the supermarket equipment at $75,000 and the supermarket inventory at $333,153.00 (Adv. Docket No. 232 at p. 29; Appellant Appx. at p. 228). It, however, declined to adopt as unsupported the expert's conclusion with respect to the supermarket's loss of income (Adv. Docket No. 232 at p. 30-231; Appellant Appx. at p. 229-21).[5]

As for the amounts awarded, PCPR claims Mr. Avilés's assumptions were speculative, unrealistic, and unreliable (Docket No. 7 at pp. 23-28), and his report false, unreliable, and deficient. Id. at p. 25-28. But the bankruptcy court acted within its discretion in assessing the admissibility and weight of the expert's testimony.[6] See, Palmacci v. Umpierre, 121 F.3d 781, 792 (1st Cir. 1997)(a trial court has wide discretion in determining the admissibility of expert testimony, especially where the issue is being tried directly to the bench).

Not only did the bankruptcy court correctly analyze, consider and deny PCPR's request to strike Empresas Martínez' expert *before* trial (Adv, Docket Nos. 116 and 240), but properly entertained and denied PRPC's objections following Avilés' testimony, and, again, on reconsideration after trial. For the sake of avoiding repetition of a well-reasoned decision, the court hereby adopts and incorporates by reference the bankruptcy court's analysis and conclusions

---

17 (1st Cir. 2008). The abuse of discretion, however, must have "resulted in prejudice to the complaining party." Licciardi v. TIG Ins. Group, 140 F.3d 357, 363 (1st Cir. 1998). Otherwise, the decision will not be disturbed. There is no reason to disturb the bankruptcy court's decision.

[5] PCPR elected not to call an expert on its own. Appellant's Appx. at p. 225.

[6] In fact, the record confirms that the bankruptcy court addressed PCRP's challenges to Empresas Martinez' expert on multiple occasions.

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 10

regarding PCPR's request to strike expert testimony at pp. 26-32 of its Opinion and Order of April 4, 2018. Because there was no abuse of discretion, the bankruptcy appeal's decision on this matter is AFFIRMED.

2. <u>Attorney's Fees</u>

PCPR maintains the bankruptcy court erred in awarding Empresas Martínez $107,627.56 in attorney's fees (Docket No. 7 a pp. 33-38). The bankruptcy court addressed PCPR's: (i) challenges for all work performed by the Conde firm prior to the adversary complaint; and (ii) objections to a number of time entries related to matters outside the scope of the adversary proceeding (and, therefore, ineligible for compensation) (Docket No. 362 at p. 4 and Appellant Appx. at p. 236). It made a downward adjustment: (i) on the work performed by both the Conde firm ($120.00) and Robles ($3,014.00) for work performed outside the scope of the adversary proceeding; and on the work the Conde firm performed ($3,557.50) for fees incurred in a separate litigation conducted in the district court against Mr. Martínez – as validly objected by PCPR; and (iii) to entries that were deficient and not properly supported ($297.50).

Likewise, the bankruptcy court examined and rejected: (i) PCPR's challenge to several entries for "strategy meetings" after finding that the meetings were not unreasonable in terms of frequency and duration; (ii) PCPR's objections to a time entry related to the work performed by a paralegal; and (iii) a number of challenges made by PCPR on "block billing" and on "redundant, excessive or otherwise unnecessary" grounds, after holding that the entries were sufficiently detailed, with one exception (warranting a downward adjustment of $200.00).

Along the same line, the bankruptcy court: (i) adjusted the compensation related to work performed by Robles' paralegal (adjusting the award by $1,762.50); and (ii) upon PCPR's objection, adjusted in 20% Empresas Martínez' award for the legal work performed from the date

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 11

plaintiff learned of the sale of the gasoline service station, through the date on which plaintiff finally informed the court of this fact, finding that a 20% reduction ($4,984.80) was commensurate to the delays and waste of judicial resources caused by Empresas Martínez' non-disclosure.[7] Even more, it applied an additional adjustment of $680.00 for the time attorney Robles spent drafting the amended complaint, which, as the bankruptcy court explained, did not comply with the court's order and led to wasteful litigation, and addressed PCPR's argument over "the bad faith tactics" employed by Empresas Martínez' attorney and the contention that Empresas Martínez did not "substantially prevailed" at trial. In PCPR's view, those mattes required an adjustment of 92% of trial related attorney's fees (Adv. Docket No. 362 at p. 11).

The bankruptcy court agreed with PCPR that some reduction was appropriate considering that attorney Robles extended the length of the trial "by repeatedly focusing on irrelevant lines of inquiry with witnesses in an attempt to re-litigate a related district court case despite multiple warnings by the court" and "attempting to conduct an evidentiary hearing on a matter already decided by the court," but found the 92% adjustment requested by PCPR "too harsh." Therefore, considering the unnecessary delays caused by attorney Robles at trial and that Empresas Martínez only recovered on one of the four claims of the complaint, it concluded that a 25% reduction of attorney's fees for trial related work was appropriate and, accordingly, made a downward departure of $14,609.14. The bankruptcy court's analysis, findings and conclusions are well supported.

3. Costs

PCPR maintains the bankruptcy court erred in awarding $6,364.99 in costs (Docket No. 7 a pp. 33-38). PCPR complains that the costs should be reduced or eliminated. The court has

---

[7] The court explained that plaintiff's failure to inform the court in a timely manner caused unnecessary delays in the litigation and wasted judicial resources (Adv. Docket No. 362 at p. 8).

In Re: Empresas Martínez Valentin Corp.
Civil No. 17-2358 (PAD)
Memorandum and Order
Page 12

examined the entries the bankruptcy court analyzed in light of the totality of the record, and confirms that the bankruptcy court used its sound discretion and adequately scrutinized and evaluated all entries. PCPR has not provided a single valid reason to disturb the bankruptcy decision on appeal.

### III. CONCLUSION

For the reasons stated, the bankruptcy judgment is AFFIRMED. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2018.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge